Good morning. May it please the court, Christy Martin for the City of Houston. We have a matter today that is proceeding before this court strictly on issues of Texas state law. This case is about the statutory interpretation of the Texas Tort Claims Act, specifically the TTCA's 911 exception and the emergency exception. And we're here on 12b6 proceedings. So the issue before the court is whether the plaintiff alleged facts to sufficient to overcome Houston's governmental immunity based upon the application of these exceptions. The trial court held it did, but that is the point of error and that's the issues that's before the court today. I wanted to provide a brief overview of the mechanics of the Tort Claims Act to start. I was then going to move on to the 911 exception and then talk more about the emergency exception if I had time. We also briefed the applicability of negligence per se theories under Texas state law. I'm not going to talk about that today. That wasn't part of my plan, but if the court has questions, I'm certainly here and able to discuss that if the court is interested. So starting with the mechanics of the Tort Claims Act, the Texas Supreme Court has instructed that there's really some special ground rules that we need to follow in adjudicating Tort Claims Act cases. And we start from the presumption government is immune. That is the status quo. And that status quo is only changed when the plaintiff pleads and proves facts that demonstrate a waiver of governmental immunity. And that has to be in clear and unequivocal terms. And that waiver has sort of a two-step process involved. I'm just, because your time's up, I think we probably understand the law. So as I understand it, there are lots of collisions when emergency vehicles have to go fast. It's a necessary but tragic reality. Hence, we get these exemptions. We're looking at 546, correct? That is correct. Okay. So if we just look right at those exemptions, are you arguing that the emergency exception applies whenever there's a collision? Just if the emergency vehicle tries to avoid a really bad collision, then it's necessarily an emergency? Or is that a subordinate or not at all argument? That is one of our... Okay. Do you have any authority for that? That the emergency is the collision as they smash into somebody? Well, that's why I was going to start with... But I'm just asking you, can we peel that one away? Or do you have authority for that? We do not have an... I don't have a Texas Supreme Court case for that. And what about any authority that says, just because you're assigned still, do you have any authority that says, just be it by virtue of the fact that a vehicle is still assigned to a particular incident that was an emergency, that alone makes it an emergency? Do you have authority for that? Yes. Texas Department of Public Safety versus Little. That was the one where the call... There was never an emergency. The call was miscoded by dispatch as an emergency call. Were they still going to it in the facts? Yes. So we're really in the world of responding? Yes. Okay. Yes. And what's your best case? In Texas law, it's an eerie guess, and it is tragic. What's your best case that even during a response, after the person who's been apprehended is booked, it's still an emergency to give governmental immunity? What's your best case? The best case is City of San Antonio versus Hartman. That's a 2006 Texas Supreme Court case. It had nothing to do with police or fire. It was vehicles that were... and governmental entities or officials who were going to put barricades to block areas that... 42, but I'm asking best authority to... It's over, returning from. Is there any authority ever in Texas? It's a big state, lots of these incidents. So I have two points to that. First of all, we have to go back to a broad construction of these exceptions. If there is no clear and unequivocal authority prohibiting their application in these facts, then we have to resolve all doubts in favor of immunity. But there is so broad that it snaps. I mean, here you've got the officer going to the emergency, stipulate that it's an emergency, somebody driving under the influence. He apprehends the suspect. He takes the suspect back to the prison. The prison, I mean, they book him in. And then what the officer said, I thought was, well, I really had to rush because I had to get my report done. So I was sort of done with the round trip on apprehending the suspect, but I was running back to the station to do the paperwork. How in the world does that encompass an emergency still? Okay, so that's where... that was the judge Higginson, which was, we can't consider this incident over. We have to look at specifically the emergency exception. It is over when the call is closed out. This call slip was still open. Here's what I really want to hear. So I really want you to have a chance to talk to me. I really want to just hear you tell me what facts in this case make this an emergency that continued throughout the period of time when he was returning to the police station. Tell me what facts make this some kind of a continuing response to the emergency. Right. That's what I want to hear. The ultimate premise of your question is that there must be an emergency situation that continues, and that is not the law in Texas. It was assigned as an emergency call. It remained classified as a priority two call, which is considered an emergency call. By the state of Texas? By HPD policy. City of Houston Police Department. Yes, as well, and this has been recognized in two Texas Supreme Court cases, City of Houston v. Green and City of Houston v. Sahls. Both those were also code two calls that were classified as code two, and the Supreme Court recognized, yes, these are emergency calls based upon how HPD general orders classify calls. I'm guessing those are the mistake. It wasn't, but it was classified, but therefore the driver still thinks got to get there. Are those response cases? They're coming back, and if so, why isn't the important hypothetical question, what if the people back at the headquarters just forget to ever take him off assignment? So he goes home, and then he tragically hits and kills a kid that night going to Taco Bell. Because it's still in the books assigned, it's still an emergency, Houston gets to give its officers free passes? No, Judge. At that point, coming back from Taco Bell would put us in an entirely different ball of wax, that he's outside the scope entirely. Okay, but what about then they cite Choudhury? The investigator goes back to take the photos, the arson investigator, then tragically after he's finished the emergency, but right away afterwards, hits and kills a kid not responding to an emergency. Choudhury is distinguishable for several reasons. First of all, the fire inspector was never assigned to any part of the emergency response, and our officer was. He was the primary unit who was responding to this 911 call. And also, Choudhury predates City of San Antonio versus Hartman, which really emphasized we have to construe these exceptions very broadly. Why? Because these were designed to ensure that waivers of governmental immunity are limited, and that we don't exclude from the possibility that the legislature intended this to be part and parcel of it. I also want to go back to the 911 exception, because the 911 exception merely requires that the situation arise from a response to a 911 call. There never has been a requirement that there be an emergency situation or the time pressure of an emergency. This merely needs to be arising from... So he was still responding to the 911 call when he was on his way back to fill out a report. That's your contention? Yes, because filling out the charges, you're never going to get someone convicted of a DWI if there are no charges, right? So this was part and parcel... But it's Houston that says this report has to be done within two hours. That's the City's policy. That is HBD's policy. So the City gets to rewrite the State statute. Makes all of that a part of the whole response to the 911 call. That's according to the City of Houston. Sure. And one of the questions that came up with the panel when I was arguing City of Houston versus Sahls is, do we defer to local governments as to what they consider an emergency? That did not get into the Sahls' opinion. I thought you told me it didn't even have to be an emergency. Well, it doesn't. It has to be responding to a 911 call. Right. And I think that's two sides of the same coin. The State statute merely says responding to a 911 call, arising from. Okay. Now, for the emergency exception, there has to be either a classification of the call as an emergency, and this is where the Texas Supreme Court has historically deferred to local jurisdictions to decide, well, what is an emergency in Houston versus... But do they defer to the local authorities about how long the emergency persists, the duration of the emergency? I am not aware of any authority that says that. The best case, I think, for that arises from another weather emergency. I don't think it's Supreme Court. It might be Corpus Christi that talked about a hurricane response. So we knew a hurricane was coming. There was several days of hurricane response. So just because you have a long time to respond doesn't negate the importance of the emergency and does not negate application of the emergency exception. So there's a hurricane warning issued for 48 hours, which maybe the definition of warning is hurricane conditions within 24 hours. I can't remember exactly. But a warning is posted. So during that whole 24-hour period, basically, are citizens just out of luck if an officer hits them and kills them and they're rushing around? I mean, is everything just suspended for that whole period, whatever they're doing? I think arguably, yes. What's the support for that? City of San Antonio versus Hartman. And the whole point is, we are setting public policy goals for the state of Texas. This is the legislature's domain. And the legislature has decided we want our governments to take action and prompt action. But that doesn't, well, first of all, it's a policy argument. But number two, it doesn't even make sense to me. In other words, we've all seen police officers pull over right afterwards to fill out the booking sheet. Here, they booked the DUI suspect. He could have just filled it out there. The emergency can't just, I don't think, can't be, well, he decides to look down at his laptop going 70 miles an hour in a 35-mile zone to finish it before the two-hour period. Is that what you're really arguing? What I'm really arguing is that there are two levels of emergency calls or situations, okay? The first is the one you previously asked about. The illegal actions of Charles Payne turning in front of him when he had a DUI. You said you had no authority to support that as an emergency. Judge Graves asked you explicitly, is there an emergency as he's driving back? Your only answer was the emergency is because it was classified as an emergency. Or do you have authority to say this individual actually was still in an emergency situation? So we have to take them separately. And I'm asking if you have authority for that one, and you said no. And that is, this is a situation that has not come up with Texas law. So then let's stick with the one that you say, let's go to your second scenario that might have Texas authority. Go ahead and finish it. What is it? So if a call is classified as a call, there does not have to be an underlying emergency. The Texas Department of Public Safety v. Little says that. But none of that answers how long the emergency lasts. I mean, because again, you've got no case where the officer goes out to the emergency situation, and what we're talking about is not really even coming back from the emergency, but coming back, making a stop, booking the suspect, and then a third leg of this trip. There's no authority for that emergency extending to that point, is there? But that's the opposite way of looking at it. We have to look at issues of immunity from a perspective, if there is no applicable authority, if there is no clear and unequivocal waiver, city retains its immunity. But the fact that we're having this debate, doesn't that mean at 12B6, Houston loses? No, sir. Because the plaintiff has the burden to negate fully, with facts, applications of the exceptions. If the plaintiff does not plead facts, an authority to conclusively, to clearly and unequivocally- If we were to accept that, I do think you've got to answer, Judge Wilson, when does it stop? Is it up to Houston when it stops? The Texas Supreme Court has never determined when it stops. And so in the absence of that answer, then we have to assume we cannot exclude clearly and unequivocally. Should Horry predate the authority you're relying on? That's why it's not good law? It has been superseded by City of San Antonio versus Hartman, yes. And the court said that in City of San Antonio? No, no, no, no, no. Has any case ever said it's been superseded, or are you just telling us that? No, I'm telling you that. Yeah, because- It doesn't look like it's been superseded to me. Makes good sense to me. But you're telling us it has been? Yes, because- Oh, my time is up. Can I finish that sentence? You may. Yes. Because Chaudhry and Hartman cannot stand together. Chaudhry construes the exception narrowly. Hartman says we construe the exception broadly. Under vertical stare decisis, Chaudhry must give way. Thank you. Counsel. Good morning, Your Honors. You may proceed. Thank you, Your Honors. No case, no Texas case, no federal case applying Texas law has ever held that a state employee returning to the office in order to fill out paperwork following a resolved emergency continues to fall within either the emergency or the 9-1-1 exceptions under the TTCA. No court has ever held that. This court certainly should not be the first without certifying the question. Judge Wilson put it well in terms of segmenting. I know this case isn't a leg two step, but would your position be the same for leg two where the officer is transporting the suspect to be booked? Would that still be an emergency? It's a closer question, Your Honor. Closer question. I think it probably is an emergency. It's still. Okay, that's what I thought, because that would be consistent with the ambulance cases. Incident happens, patient on the transport slips, still emergency.  Denby. That's Denby. Okay. So it really is the third leg problem. I think you have to look at what the emergency is to figure out when it's over. If the emergency is a drunk driver and a police officer is called to arrest that drunk driver, once the driver is arrested, and certainly by the time they're booked, that emergency is resolved. Returning to the station. When you say certainly by, there is that second leg. I would think it might still be an emergency. They've got to get this guy who could be in the back, could somehow still be a danger. They got to go quickly. And we give them an exemption. But your point is you don't have to win on that, right? Pardon me? You don't have to win on that because this guy was booked. I agree. I don't think our case is even close to that situation. If your honor is posing a question where the suspect is still. I'm just trying to define the line for police because each one of these emergency vehicles is different. I think ambulance go and return. Of course, police go maybe book, but not frolics thereafter or rushing back to finish paperwork. I think your honor, if you look at the cases that have addressed the emergency and 911 exceptions, they've taken a pretty common sense approach and I'm including chowdery here. Denby treats EMTs who are taking a patient out of the house on a stretcher at that moment, falls off the stretcher, sure. That's in the middle of the emergency. The other cases that they rely on little and the others, these are SWAT officers driving to a hostage taking or a police officer actually going to assist another person in making an arrest. Chowdery is the opposite situation and it is the only case that involves a state employee who's going back to the office to do some follow on work after the emergency is over. That's your best authority, right? Chowdery is the best authority. It's the only one on point. It's been superseded. Yes, it has not. I'm surprised that was her answer, but she must know Texas law better because when I look at 546, when it relates to fire vehicles, it says an emergency is responding to, but not returning from a fire alarm. You know that? Yes. So it does seem like the legislature did know, she didn't argue that as the basis. She says it's been superseded. I would have said Chowdery is explained just statutorily because it says, but not returning. So fire vehicles, they carved it out. Your Honor, I don't think Chowdery depended upon that. That is the language of the code. That's the language of the code. So you know it and they're not relying on that language. They said it's been superseded. Okay. That's their position. If I can be clear, I don't think Chowdery relies on that language. My understanding is they're saying Chowdery has been superseded by Hartman. Yes. Hartman is not on point, does not mention Chowdery, is not a motor vehicle. I only said that because that was, I read the code. Counsel must know the code. She didn't say I'm right. She didn't rely. She said Chowdery is just bad law. And you're saying Hartman doesn't say it's bad law. Chowdery, yeah, Hartman does not mention Chowdery. And I don't think there's anything in Hartman that casts doubt on Chowdery's holding. Hartman was not a motor vehicle case. It didn't address the exceptions that are applicable here. It addressed the emergency exception having to do with sandbags and flooding and in a circumstance like that. But it did not address the circumstance of a state employee who's returning to do some paperwork after a resolved emergency. Chowdery did. Chowdery was about that. It was a 9-1-1 exception case. It was an emergency exception case, both that are cited here. And there's a different code language. It was a fire alarm. It was a fire alarm, but the question presented and analyzed, I think, persuasively by the case in Chowdery is you had a fire inspector who was dispatched as part of a team responding to a 9-1-1 call. Fire's put out. He goes back to take some pictures. And as he's backing out from that to go back, he runs over a child. That's the only case that's similar even to the factual situation presented here. And it's against Houston. I think with that being the state of the law, your honors, it's not a case where a federal court should go out and create a broad new area of protection under the TTCA when the Texas courts have never suggested that that should be the holding. Just another word about Hartman. Hartman certainly does say that you need an unambiguous waiver of liability for sovereign immunity not to apply and that they're supposed to be given a broad construction. The TTCA's negligent motor vehicle operation provision is an unambiguous waiver of liability. If not for invoking the instructions, driving 70 miles an hour in a 35 zone and causing a T-bone collision is going to fall comfortably within the statutory exception for negligently caused car accidents. Hartman does not say what I hear Houston arguing. It includes return, still reckless, 75, 30, looking down at your laptop. I think we have certainly alleged facts that would permit a finding of recklessness, which is important if the court were to find that either of the exceptions are implicated on the facts, right? Because recklessness limits the emergency exception. And then the statutory limitation on the 9-1-1 exception, I would say includes the Chapter 546 provision of recklessness as well. We have alleged a lot of facts at the pleading stage that I think could support an inference of recklessness. Not just the speed, although that's the big one, 70 in the 35, is reckless. But there's also, if you look at the cases that analyze recklessness under the TTCA, they consider, importantly, what was the officer doing at the time to justify the excessive speed? Maspero, the Maspero case talks about that and the Hudson case both talk about that. And they both involved officers who were on their way to an emergency. Her argument is just now limited to oral argument. If they classify it as still an emergency, that ends the story. Yeah, and that can't be it, Your Honor. I think one of the best questions that was coming up during Houston's argument is, when does it stop? And in this regard, I would refer the court to the complaint in the case, which actually includes the Houston Department Circular on this two-hour requirement. That's the record at page 17. This is not over just when the officer files the initial report. If you read the rest of it, it says, officers are reminded that they are responsible for the content of the charges and must make any required changes until the assistant district attorney's office has accepted them. If the HPD JCPU supervisor determines that the charges require additional information or revisions, the officer shall make the necessary arrangements to ensure that appropriate revisions are immediately made. There can be a process here about completing these charges that continues well after the officer getting to the station and filing the charges. At what point here are we no longer responding to an emergency? At what point is this no longer a continuing response to a 911 call? You could even imagine further down the road where the officer, weeks or months later, has to go to court to testify, simply because it remotely emerged from a 911 call does not mean at these much later stages, when the emergency part is over, that those exceptions still apply. The last point I want to make, Your Honors, and then if there are no further questions for me, I will sit, is that Hartman, that the city is placing their principal reliance on, it seems, since chowdhury is otherwise pretty opposite their position, does not hold that a court is obligated to give the broadest possible construction to the statutory exceptions. And Hartman does also not hold what I hear Houston to be arguing, which is that I need authority precisely on point, saying that this is not a continuing response to an emergency. Hartman doesn't say any of those things. It encourages a broad construction, but it's also a construction that in Hartman itself is informed by the policies behind the statute. That's how Hartman approaches the analysis of the issue. And I think if you look at the policies that are implicated on this statute, Your Honors, it does not favor the city of Houston. The policy, the beginning policy of the TTCA is to provide citizens a remedy against negligent driving by state employees. That's one of the core unambiguous liability waivers in the TTCA. There are policy exceptions for emergency situations and 911 calls that implicate obviously important public concerns. The ability of officers to respond promptly and without fear of future liability. None of those policies are implicated in giving car plunge to a police officer to twice succeed the speed limit on a known hazardous road just to fill out a form. There are no further questions, Your Honor. I'll yield my time. Thank you, counsel. Thank you. Rebuttal. Yes. Judges, I would like to start with a response to the discussion of looking down and exceeding the speed limit, translating to recklessness. Since we did our briefs, the Texas Supreme Court issued City of Austin v. Powell. It's a December 31, 2024 opinion that we don't even have a southwest third site for. But in that opinion, the Texas Supreme Court reiterated the position it took in City of Houston v. Green that we've not yet considered a circumstance where speed alone arises to recklessness. That was reiterated in Powell. Powell also expressly held that failure to keep a proper lookout, such as looking down at your MDT, does not amount to recklessness. That arises from negligence only. But here we got both. Yes. And the Texas Supreme Court in Powell said these and went through several other laundry list violations of general rules of driving and said taken separately or together, these things do not reach recklessness. That would defeat application of the emergency exception. I just forget the facts. What did he look down to do? I know it was his laptop. Was it chat, GTP? No, seriously, what was he doing? And I think the timeline has gotten a little off on that. But you said, you described it. I couldn't hear you. His MDT is a shorthand for mobile data terminal. That's how officers are communicating with dispatch in addition to their radio. It's a computer terminal that sits in their cars. And it wasn't immediately preceding the accident. And there was no driver in attention that contributed to cause this accident by our officer. That's an undisputed fact. So what we have is no clear and unequivocal language from either the Tort Claims Act or the Texas Supreme Court excluding this circumstance from application of the 911 or emergency exceptions. Plaintiffs have also pled no facts to suggest a violation of any applicable law. And in the absence of any applicable law, which would be Chapter 546 of the Transportation Code, there is nothing in this fact pattern to suggest a reckless act. Now, what I didn't talk— Did he have blue lights on? He did not have his— No sirens? No, Judge. He did not have any emergency equipment on. If you look at both City of Houston v. Green and City of Houston v. Soles, the ability to—or the decision to use lights and sirens is soundly in the discretion of the operator and the standard response to a priority to— Well, sometimes yes and sometimes no, as the Supreme Court has recognized in Powell, City of Houston v. Green and City of Houston v. Soles. You can be responding to an emergency call. You can be reacting to an emergency situation. You can be responding to a 911 call. And all of these things can take place without emergency equipment activated. That's what the Supreme Court has said. It is correct. The position is that the emergency, in his mind, he was speeding to do the paperwork, right? I don't think that's anywhere in the record. He realized he had time pressure to get back to the station, but he wasn't speeding the whole way. There was a brief moment, maybe 2.5 seconds at the most, where he reached 70 miles per hour. The Supreme Court has rejected the situation that a momentary judgment lapse reaches the level of recklessness that could defeat application of these exceptions. He testified that he was driving reasonably prudently. He was obeying traffic signs and signals. He wasn't accelerating aggressively. He wasn't swerving in and out of traffic. These are all things that a reasonable, prudent driver does. And in the absence of facts in the complaint saying otherwise that the court is entitled to trust because it isn't contradicted by his actual testimony, then we cannot reach recklessness on this complaint. We cannot defeat application of the 911 or emergency exceptions on this complaint. But if the court has any doubt, I encourage the court to go ahead and certify this to the Texas Supreme Court since this is purely an issue of Texas statutory interpretation. I will yield. Did we certify the question to the Texas Supreme Court, the Supreme Court of Texas, what these exceptions mean in terms of their duration? I think, yes. And we put in our reply brief somewhere, here's a particular issue. When does the emergency call terminate? And I think that would be a fair question, a fair phrasing of the question to certify. I'm out of time. If the court has no further questions. Thank you, counsel. Thank you. The court will take this matter under advisement. This concludes the cases on today.